## Lightcap et al. v. Swan et al.

W. C. Chapman and E. E. Coyne, for petitioners; John A. Scott, contra.

LANGHAM, P. J., Feb. 17, 1930.—The plaintiffs in the above stated case, children of three sons of Solomon Lightcap and widow of Foster, a son,

brought this action against the defendants, children of two daughters of the said Solomon, upon a petition filed Sept. 27, 1926, praying the court to issue a citation to the defendants to appear in court to show cause why the lands situate in Rayne Township, Indiana County, devised by Solomon Lightcap to his three sons, Wilson Lightcap, Solomon Foster Lightcap and Samuel Godfrey Lightcap, should not be discharged from the liens of the legacies bequeathed to his two daughters, Mary Ann, intermarried with Archie G. Earhart, and Sarah Jane, intermarried with Samuel Swan, as provided by the Act of Assembly approved June 7, 1917, § 27, P. L. 447.

The said Solomon Lightcap died Aug. 19, 1889, testate, leaving a last will and testament, dated Dec. 26, 1882, probated Sept. 10, 1889, in which his son, Solomon Foster Lightcap, was named as one of the executors, and filed the first and final account of his father's estate to No. 7, June Term, 1922, in the Orphans' Court of Indiana County.

The testator, Solomon Lightcap, devised to each of his three sons herein mentioned certain farms in Rayne Township. His will also provided that the sum of $1200 should be paid to his daughter Mary Ann and also $1200 to his daughter Sarah Jane, since intermarried as aforementioned, the last payment to be made three years after the death of testator. That brings the controversy up to Aug. 19, 1892.

The petitioners have not alleged, nor offered any proof, that actual payment of the legacies charged in the will of Solomon Lightcap in favor of Sarah Jane Swan and Mary Ann Earhart, daughters aforesaid, or their legal heirs or representatives, defendants, was at any time heretofore made, except in part; but it is alleged that no payment was made within the period of twenty years, and they take the position that the lands bound by the legacies are no longer chargeable therewith, under the Act of June 7, 1917, by reason of the presumption of payment; and after the expiration of twenty years from the due date of the legacies, to wit, Aug. 19, 1912, a legal presumption of payment arises, regardless of whether the record shows payment or not.

On the margin of the record of said will are receipts signed by Mary Ann Earhart and Sarah J. Swan for the sum of six hundred ($600) dollars each on their legacies of twelve hundred ($1200) dollars each, leaving as not paid by the devisees of the lands six hundred ($600) dollars to Mary Ann Earhart and six hundred ($600) dollars to Sarah J. Swan, or their respective heirs and representatives, being the defendants in this case.

Section 27 (b) provides, inter alia, that where by a last will any legacy shall have been charged upon any land (admittedly as in this case), if any such charge shall have been paid, or a period of twenty years shall have elapsed after the principal of such charge has become due and payable, and no payment shall have been made within such period by the owners of the land, it shall be lawful for the Orphans' Court to entertain a petition for the discharge of said land from the lien of said legacy.

Section 27 (b), 2 and 3, prescribe the substance of the petition and the method of service on parties interested, and under 4 the duty of the court is to fix a hearing to determine, before any decree can be made in favor of the plaintiff, that the legacy has been paid or is otherwise no longer chargeable upon the land by reason of a presumption of payment.

In this case the hearing required by the act has been had. The record of the will in evidence shows a part payment, to wit, six hundred ($600) dollars to each legatee. Then, the remaining question to be determined is, is there a presumption that the balance of six hundred ($600) dollars to each legatee from lapse of time (twenty years) has been paid? Payment will be presumed

after twenty years, unless demand is shown to have been made within twenty years of the due date. If the testimony shows that such demand as is recognized by the law has been made by the defendants or their predecessors in interest, then the requirements of the statute have not been met by the plaintiffs, and no order can be made discharging the lien of the balance of the legacies.

It is not claimed by defendants in the instant case that the legacies charged on the lands of Foster Lightcap, Wilson Lightcap and Samuel Lightcap are recoverable, *unless* there is proof of demand, or a declaration or acknowledgment of their existence within twenty years. In other words, the defendants assume the burden of proof that demand *was* made within twenty years from the due date of the legacies, Aug. 19, 1892, to wit, about May, 1909, and to establish such demand or acknowledgment of indebtedness produce the following testimony:

*Frank C. Earhart.* By Mr. Rowan: "Q. Who is Foster Lightcap? A. He is an uncle of mine, a brother of my mother. Q. When and on what occasion did you have a conversation with him about this matter of payment? A. In May, 1909. Q. Where? A. Out at his place. Q. What time of day? A. Along in the evening. Q. State what the conversation was about? A. Well, I asked him for this money, and he said he knew he owed it, but he wasn't going to pay it then. Q. To what money did you refer? A. Money he owed my mother from grandfather's estate that had never been paid. Q. Did you make any formal demand? A. I asked him two or three times, and he said they weren't going to pay it now."

*Edgar Lightcap.* By Mr. Scott: "Q. In 1906 you were present at a meeting between Clarence D. Swan and your Uncle Foster and Wilson Lightcap? A. Yes, I was present. Q. Where was that? A. Well, we drove from Hawthorn School. The details on that case are a little long. I think it was in 1905, but that is neither here nor there. I believe Clarence D. Swan was teaching at Hawthorn school that year. I was attending school there. There had been a good bit of talking about this. I didn't know much about it, and I said to Clarence, 'well, let's go and see about it.' Q. Did Clarence ask you anything about it? A. Oh, he talked about it. Q. Did he say you people ought to pay his mother? A. No. Q. What was he talking about? A. He was talking about the money that was coming to them. Q. And you said you didn't know anything about it? A. Well, I wasn't of age. I was a minor. Q. Did you suggest that you go and see your two uncles? A. Yes, sir, I did. Q. Your father was then dead? A. Yes. Q. Where did you go? A. To Wilson Lightcap's first. Q. What did Clarence say to them? A. He didn't say anything. Q. Well, you went up there for the purpose of seeing him? A. I went there for the purpose of asking him before Clarence about this. Q. Did you ask him? A. I did. Q. What did he reply in the presence of Clarence? A. He said there was nothing due. Q. Didn't Clarence reiterate he thought there was? A. He did not. Q. Didn't say a word? A. He did not. Q. Then, where did you go? A. To Foster Lightcap's, another uncle. Q. What was said there? A. About the same conversation. Q. Clarence D. Swan was administrator of his mother's estate? A. That I can't say. Q. He went up there with you? A. Yes, sir. Q. And never opened his head about it? A. He did not. I did the talking. Q. What did you say to them? A. I asked him if there was anything due. Q. Did you limit that to Clarence who was there with you wanting to know why it wasn't paid? A. Well, he was there; I don't know if I said anything about that. Q. You had gone up for that purpose? A. I went up for the purpose of asking Uncle Foster and

Uncle Wilson about it. Q. He made no demand at all? A. No demand was made in my presence. Q. But you did ask them and state to them that Clarence was wanting the money he was claiming was due to his mother? A. No. Q. What did you say exactly? A. I said I had heard so much about it I wanted some first hand stuff about it. Q. What was the answer? A. There was nothing due them. Q. Is that all that was said? A. That is all."

*Glen Swan.* By Mr. Scott: "Q. State whether the witness on the stand told you in the conversation you had with him in front of the First National Bank in 1925 or 1926 that he was present when your brother Clarence D. Swan made a demand on Foster and Wilson Lightcap for the payment of the legacy due your mother's estate? A. He did." By Mr. Creps: "Q. What words did he use? A. He asked him for the money owing my mother. Q. What words did Ed Lightcap use in talking with you? A. Well, he said they had asked them for that money. Q. Did he say they had asked for the money or did he say they had come up there to ask whether there was anything due? A. The money. Q. He asked for the money? A. Yes, sir. Q. You couldn't be mistaken it was the way Ed Lightcap said, they went up there because he was his Uncle Wilson and wanted to know first hand about it? A. In the first place, he came to my brother and wanted to have the thing settled up. Q. He was the one who wanted to go up there and see about it? A. Clarence had started it in the first place."

The plaintiffs object to the competency of the witnesses, Frank C. Earhart, Ed Lightcap, one of the plaintiffs called as on cross-examination, and Glen Swan. If Frank C. Earhart is an incompetent witness, then this case falls and a decree should be made discharging and freeing the lands from the liens of the legacies. It will be observed that Frank C. Earhart is one of the defendants, a son of Mary Ann Earhart, a legatee under the will of Solomon Lightcap, and at the time of the alleged demand made of Foster Lightcap the said Mary Ann Earhart was deceased. As the argument has been presented to the court by counsel for the plaintiffs, if Frank C. Earhart is a competent witness, which is denied by plaintiffs, he is made so under the latter part of clause *(e)*, section 5, of the Act of May 23, 1887, P. L. 159, which clause in full reads as follows:

"Nor where any party to a thing or contract in action is dead, or has been adjudged a lunatic, and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record, who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased or lunatic party, be a competent witness to any matter occurring before the death of said party or the adjudication of his lunacy, . . . unless the issue or inquiry be *devisavit vel non*, or be any other issue or inquiry respecting the property of a deceased owner, and the controversy be between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent witnesses."

However, counsel for the defendants contend that in clause *(e)* the exception, by reason of death or lunacy of a party in said clause designated, is, under certain circumstances, modified, as here, so as to make the otherwise incompetent witness competent. Under the rule of evidence laid down in Allen's Estate, 207 Pa. 325, construing clause *(e)* of the Act of 1887, *supra*, it would seem that Frank C. Earhart is a competent witness. In the above case, Justice Brown said: "Since the passage of the Act of 1887, competency is the rule; incompetency the exception. . . . Whether what the son received

from the father be regarded as gifts or advancements, no right of the father thereto or therein passed, either by his own act or by the act of the law, to a party on the record; and the son was not, therefore, within the incompetency of clause *(e)*, section 5, of the Act of 1887."

In the case at bar no right of Foster Lightcap, or of the other devisees to the legacies given under the will of Solomon Lightcap to his two daughters, passed either by the individual act of the devisees or by the act of law to any adverse party on the record. The right to these legacies was in the daughters and passed on their death to their respective heirs and representatives. The legacies were as distinct and separate to the daughters as were the devises of land to the sons. We cannot see that the issue in the record raises a controversy about "a thing or contract in action" by and between Foster, Wilson and Samuel Lightcap, or their successors in title, and the successors or representatives of Sarah J. Swan and Mary Ann Earhart, as the controversy touches no right of the sons in the lands devised to them, and no right thereto or therein which has passed either by their own act, or by the act of law, to the plaintiffs. If the demand had been made immediately when the legacies became due, that would certainly not have been an adverse claim to any right in the devisees, Foster, Wilson or Samuel Lightcap.

This is an equitable proceeding, and it occurs to the court that it would be inequitable to decree interest to be paid on these balances of six hundred ($600) dollars each due to the heirs of Sarah J. Swan and Mary Ann Earhart, on account of the inactivity and evident laches in attempting to collect the unpaid balances. In fact, this matter is before us, not because of any action brought by the defendants, but on account of the plaintiffs' activity to free the lands from the liens of the legacies. Admittedly, the legacies were due Aug. 19, 1892, and no demand was made until May, 1909. No action at all appears on the part of defendants, but plaintiffs filed their petition Sept. 27, 1926, thirty-four years after the due date of the legacies in controversy. We can see no equity in exacting interest in reward for such inactivity.

The petition of the plaintiffs for a citation in this case has given to the court full jurisdiction of the subject-matter, and power to dispose of the case and make such order and decree as in justice and equity the court shall deem meet.

In Postlethwaite's Appeal, 68 Pa. 477, 480, in the opinion, Justice Sharswood states: "There was no incongruity as is supposed in the decree below dismissing the petition of the appellants with costs, and at the same time making a decree in favor of the respondent, awarding the principal of the legacy to him. . . . It is evident that the jurisdiction of the court having attached by the presentation of the petition, it has entire control of the subject as a court of equity would have. Having all parties before it, it can and ought to make such decree as law and equity require, and which will be binding upon all. It may, therefore, dismiss the petition of one who shows no right, and decree that the legacy charged shall be paid to another to whom it is adjudged to belong."

The court, therefore, in accordance with the findings and conclusions contained in the foregoing opinion, makes its order and decree as follows:

## Decree.

And now, Feb. 17, 1930, upon due consideration, it is adjudged and directed that the rule be discharged and the petition dismissed, and it is hereby adjudged and decreed that the sum of six hundred ($600) dollars, with interest from this date, is payable to Clarence D. Swan, Glenn C. Swan and May F. Swan Rankin, heirs of Sarah Jane Swan, legatee, and the sum of six hun-

742

dred ($600) dollars, with interest from this date, is payable to Frank C. Earhart, Minnie Earhart Hoffman, Edna Wissel Earhart and Ruth Earhart, a minor, heirs of Mary Ann Earhart, legatee, defendants.

It is further ordered and decreed that Annie E. Lightcap and William B. Lightcap, heirs of Wilson Lightcap, devisee of Solomon Lightcap, Cardilla Lightcap, Nora Sloan, Norman Lightcap, Bess Sloan and Mame Way, heirs of Solomon Foster Lightcap, devisee, and Lizzie A. Lightcap McQuilken, Edward R. Lightcap and Earl Lightcap, widow and heirs of Samuel Godfrey Lightcap, devisee, or the present owner or owners of lands devised, pay the said amount of six hundred ($600) dollars, with interest from this date, to the heirs of Sarah Jane Swan, above named, and the further sum of six hundred ($600) dollars, with interest from this date, to the heirs of Mary Ann Earhart, above named, within six months, and that upon failure to pay within said time, proceedings may be instituted, as devised to the above-named legatees.                    From James L. Jack, Indiana, Pa.